# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

IN RE:  PAUL CHARLES
LAUBENSTEIN and LISA MARY
LAUBENSTEIN

_____

CREDITOR, PILGRIM SKATING
ARENA, INC.,

 Appellant-Creditor,

v.                                                              Case No: 2:20-cv-765-SPC
                                                     Bankruptcy Case No. 9:20-bk-3697-FMD

PAUL CHARLES
LAUBENSTEIN and LISA
MARY LAUBENSTEIN,

            Appellee-Debtors.

_____/

## OPINION AND ORDER[1]

    Appellant-Creditor Pilgrim Skating Arena, Inc. ("Pilgrim") appeals the

bankruptcy court's[2] order denying its motion for relief from stay to allow for

continuation of arbitration proceedings.  (Doc. 1).  Appellee-Debtors Paul C.

Laubenstein and Lisa M. Laubenstein's oppose.  For the following reasons, the

Court overrules Pilgrim's appeal and affirms the bankruptcy court's order.

_____

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees.  By using
hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties
or the services or products they provide, nor does it have any agreements with them.  The
Court is also not responsible for a hyperlink's availability and functionality, and a failed
hyperlink does not affect this Order.
[2] The Honorable Caryl E. Delano, Chief United States Bankruptcy Judge of the United States
Bankruptcy Court for the Middle District of Florida.

"Under the Bankruptcy Code, filing a petition for bankruptcy automatically 'operates as a stay' of creditors' debt-collection efforts outside the umbrella of the bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC,* 140 S. Ct. 582, 586 (2020) (citing 11 U.S.C. § 362(a)(1)). The bankruptcy court may grant relief from the automatic stay. 11 U.S.C. § 362(d). The bankruptcy court's adjudication of a motion for relief from the automatic stay provision is appealable. *Ritzen Grp, Inc.*, 140 S. Ct. at 586; 28 U.S.C. § 158(a). When a matter is appealed from bankruptcy court, the district court functions as an appellate court. *Williams v. EMC Mortg. Corp. (In re Williams),* 216 F.3d 1295, 1296 (11th Cir. 2000) (per curiam). "Factual findings by the bankruptcy court are reviewed under the limited and deferential clearly erroneous standard." *Club Assocs. v. Consol. Capital Realty Inv'rs. (In re Club Assocs.),* 951 F.2d 1223, 1228 (11th Cir. 1992). Legal conclusions are reviewed de novo. *Id.*

Paul and Lisa Laubenstein own New England Senior Hockey League, Inc., a corporation that manages adult hockey leagues in Massachusetts. (Doc. 15-1 at 172 [App. 168]). Pilgrim owns three ice rinks and office space in Massachusetts, renting them to third parties. (*Id.*) In June 2010, Pilgrim entered into a ten-year License Agreement with "Paul Laubenstein d/b/a New England Senior Hockey League" for rental of Pilgrim's ice rinks and office space. (*Id.* at 244-49 [App. 240-45]). The agreement was amended the month after. (*Id.* at 250-56 [App. 246-52]). The agreement was signed by Paul

Laubenstein as the "duly authorized officer or agent" of "Paul Laubenstein d/b/a New England Senior Hockey League." (*Id.* at 172, 249, 256 [App. 168, 245, 252]).  The agreement provided for quarterly rental payments to Pilgrim for ice time and monthly rental payments for office space. (*Id.* at 172 [App. 168]).  The agreement also contains a noncompete agreement prohibiting the licensee—Paul Laubenstein d/b/a New England Senior Hockey League—from renting ice rinks within a 20-mile radius of Pilgrim's rinks. (*Id.*)  Finally, the agreement required "any action for damages" to be submitted to arbitration. (*Id.* at 172-73 [App. 168-69]).

New England Senior Hockey League, Inc. was incorporated in Massachusetts in June 2012, with the Laubensteins serving as its only officers and directors. (*Id.* at 272-76 [App. 268-72]).  The License Agreement was never updated to replace "Paul Laubenstein d/b/a New England Senior Hockey League" with New England Senior Hockey League, Inc.

Pilgrim terminated the License Agreement effective September 1, 2019 based on Paul Laubenstein's alleged failure to pay rent and violation of the noncompete provision. (*Id.* at 173 [App. 169]).  That same month, Pilgrim submitted a Demand for Arbitration, naming as respondents New England Senior Hockey League, Inc. and Paul Laubenstein. (*Id.*; *Id.* at 277-78 [App. 273-74]).

The Laubensteins filed their bankruptcy petition on May 12, 2020. Thereafter, the arbitrator entered a temporary restraining order and permanent injunction against New England Senior Hockey League, Inc., enforcing the noncompete provision of the License Agreement. (*Id.* at 173-74 [App. 169-70]).

Pilgrim moved in bankruptcy court for relief from the automatic stay to continue arbitration. (*Id.* at 29-55 [App. 25-51]). The parties extensively briefed the matter. (*Id.* at 56-122, 139-48 [App. 52-118, 135-44]). The bankruptcy court denied the motion. (*Id.* at 171 [App. 167]). The bankruptcy court found that the arbitration agreement is limited to actions for damages and that Lisa Laubenstein is not a signatory or party to the License Agreement and never agreed to arbitrate any dispute with Pilgrim. (*Id.* at 175 [App. 171]). Only after the Laubensteins sought bankruptcy protection did Pilgrim seek to recast its breach of contract arbitration claims to include claims for fraud and breach of fiduciary duty, claims that must be brought in the bankruptcy case as an adversary proceeding. (*Id.* at 176 [App. 172]). Such an adversary proceeding, the bankruptcy court held, are core proceedings. (*Id.*) Likewise, the Laubensteins' objection to Pilgrim's proof of claim and Pilgrim's objection to the Laubensteins' claimed homestead exemption are core proceedings. (*Id.*) Thus, the bankruptcy court found that "enforcement of the arbitration agreement with respect to the claims that Pilgrim has asserted and intends to

assert in the arbitration proceeding inherently conflicts with the underlying purpose of the Bankruptcy Code" and principles of judicial economy requires the parties' disputes be resolved in bankruptcy court. (*Id.*)

When a party seeks to compel arbitration, courts engage in a two-step inquiry. *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). First, the court determines whether the parties agreed to arbitrate their dispute. *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). The second step considers whether "legal constraints external to the parties' agreement foreclosed arbitration of those claims." *Mitsubishi Motors Corp.*, 473 U.S. at 628. "Bankruptcy may be one of the legal constraints foreclosing arbitration, but only if the matter under consideration is within the bankruptcy court's 'core' jurisdiction, and if enforcement of the arbitration agreement inherently conflicts with the underlying purpose of the Bankruptcy Code." *In re Bateman*, 585 B.R. 618, 624 (Bankr. M.D. Fla. 2018) (citing *The Whiting–Turner Contracting Co. v. Elec. Mach. Enter., Inc. (In re Elec. Mach. Enter., Inc.)*, 479 F.3d 791, 796 (11th Cir. 2007)).

Pilgrim asserts the bankruptcy court erred by finding that Lisa Laubenstein is not bound by the arbitration agreement. Pilgrim argues the New England Senior Hockey League operated as a partnership before incorporating as New England Senior Hockey League, Inc. in 2012 and the partnership comprised of Paul and Lisa Laubenstein. Neither contention is

borne out in the record.  Both the original and amended License Agreement are between Licensor Pilgrim and Licensee "Paul Laubenstein d/b/a New England Senior Hockey League." (Doc. 15-1 at 244, 250 [App. 240, 246]).  This language is clear and unambiguous in equating Paul Laubenstein in a one-to-one ratio with New England Senior Hockey League.  The signature block on the agreements buttresses this conclusion.  Pilgrim, an entity with multiple persons able to act as officers or agents, signed the agreements through its president, whose position was specifically listed.  (Id. at 249, 256 [App. 245, 252]).  But no such position designation accompanies Paul Laubenstein's signature.  His name stands alone under the party information of "Paul Laubenstein d/b/a New England Senior Hockey League." (Id.)  Nothing in the contract denotes New England Senior Hockey League is anything but the alter ego of Paul Laubenstein.

Sinking Pilgrim's argument altogether are its actions after terminating the License Agreement.  Pilgrim sought arbitration against Paul Laubenstein and New England Senior Hockey League, Inc.  The arbitration was pending against Paul Laubenstein and New England Senior Hockey League, Inc. for eight months before the Laubensteins filed for bankruptcy.  And it appears Lisa Laubenstein's non-inclusion in the arbitration did not affect the proceedings because the arbitrator, whom Pilgrim relies on to assert the interchangeability of New England Senior Hockey League and New England

Senior Hockey League, Inc., discussed pre- and post-incorporation New England Senior Hockey League as being run and created by Paul Laubenstein, not Paul and Lisa Laubenstein. (*Id.* at 284-85 [App. 280-81]). Only following the filing of bankruptcy did Pilgrim seek to expand its arbitration to assert, for the first time, claims against Paul and Lisa Laubenstein and New England Senior Hockey League, Inc. for fraudulent transfers, breach of fiduciary duty, and misrepresentation. (*See id.* at 36 [App. 32]).

Pilgrim next argues that it can enforce the arbitration agreement against Lisa Laubenstein as a non-signatory on the grounds of collateral estoppel. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Courts have recognized "a number of theories under which non-signatories may be bound to the arbitration agreements of others." *Emp'rs Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) (citing *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995)). These theories arise out of common law principles of contract and agency law and include: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel. *Id.* (citing *Thomson–CSF, S.A.*, 64 F.3d at 776). But these theories do not apply with the same weight when a signatory seeks to bind a non-signatory. *See Bridas S.A.P.I.C. v. Gov't*

*of Turkmenistan*, 345 F.3d 347, 363 (5th Cir. 2003) ("Bridas has not brought to our attention a case where a third-party beneficiary has been bound to arbitrate a dispute, arising under an agreement to which it is not a party, that the third-party itself did not initiate in court. We decline to do so for the first time today.").

State principles of contract law apply when analyzing the doctrine of equitable estoppel in this context. *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1355 n.1 (11th Cir. 2017) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009)). The contract here requires application of Massachusetts law. "The primary form of estoppel ('direct benefits estoppel') allows a signatory to compel to arbitration a nonsignatory party receiving a direct benefit from an arbitration agreement." *Walker v. Collyer*, 9 N.E.3d 854, 861 (Mass. App. Ct. 2014). "Conversely, an alternative path to estoppel allows a nonsignatory to compel a signatory to arbitrate when (a) the nonsignatory has a close relationship with a signatory and (b) the underlying issues for arbitration are intertwined with an agreement the estopped party has actually signed." *Id.*

The second form of estoppel does not apply; Lisa Laubenstein is not seeking to compel Pilgrim to arbitrate any dispute. Pilgrim asserts Lisa Laubenstein accepted and received benefits from the License Agreement for nine years—from signing in 2010 to termination in 2019—and thus is subject

to direct benefits estoppel. The Court disagrees. Direct benefits must "flow directly from the agreement." *Id.* (citing *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001)). The benefits here flowed to New England Senior Hockey League, Inc. then to Lisa Laubenstein because of her ownership interests and employment in the incorporated entity. While Pilgrim has apparently used this theory to compel non-signatory New England Senior Hockey League, Inc. into arbitration, it cannot compel non-signatory Lisa Laubenstein into arbitration in her individual capacity.

Lisa Laubenstein did not agree to arbitrate this dispute with Pilgrim. Nor can Pilgrim compel non-signatory Lisa Laubenstein into arbitration under a theory of estoppel. This ends the two-step inquiry as to her. *Klay*, 389 F.3d at 1200 (citing *Mitsubishi Motors Corp.*, 473 U.S. at 626). The bankruptcy court did not err in denying Pilgrim's motion to lift the stay and compel arbitration as to Debtor Lisa Laubenstein.

Pilgrim argues its claims in the amended demand for arbitration— breach of contract, specific enforcement of a noncompete clause, and claim for damages—are non-core claims, thus the Bankruptcy Code does not foreclose arbitration. The Bankruptcy Code provides a non-exclusive list of core proceedings. 28 U.S.C. § 157(b)(2). A core proceeding involves a right created by federal bankruptcy law or one that would arise only in bankruptcy. *The Whiting–Turner Contracting Co.*, 479 F.3d at 797 (citing *Cont'l Nat'l Bank v.*

*Sanchez (In re Toledo)*, 170 F.3d 1340, 1348 (11th Cir. 1999)).  A proceeding is not core if it does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside bankruptcy.  *Id.*

Two of Pilgrim's three existing arbitration claims are claims for money against the estate of the debtors, constituting core proceedings.  28 U.S.C. § 157(b)(2)(B).    And  the  claims  Pilgrim  seeks  to  add  to  the  arbitration proceeding—fraudulent   transfer,   breach   of   fiduciary   duty,   and misrepresentation—are  likewise  core  proceedings  or  intertwined  with  core proceedings.  *Id.* § 157(b)(2)(B), (H), (I), and (O).  Given that the balance of claims Pilgrim has asserted or seeks to assert in the arbitration are core proceedings, the bankruptcy court properly concluded that enforcement of the arbitration agreement would conflict with the purpose of the Bankruptcy Code. *In re Bateman*, 585 B.R. at 624. (citing *The Whiting–Turner Contracting Co.*, 479 F.3d at 796).

Pilgrim, relying on the definition of core and non-core proceeding in *Whiting–Turner*, seems to argue that just because a claim sounds in state law it cannot be considered core.  Pilgrim's argument misses the mark.  While *Whiting–Turner*  explained  the  distinction  between  core  and  non-core proceedings,  it  did  so  in  the  context  of  the  non-exhaustive  list  of  core proceedings.  479 F.3d at 797.  There, the disputed assets were held by a third-party (Whiting–Turner) who owed money to the debtor (EME).  *Id.* at 797-98.

Thus, far from being a claim against the bankruptcy estate, it was the bankruptcy debtor pursuing a claim. Such a claim fell outside the list of core proceedings in § 157(b)(2) and was found to be non-core. The inverse is the case here: Pilgrim seeks monies from the bankruptcy estate in some manner. These claims are core proceedings.

In sum, the bankruptcy court properly concluded that Lisa Laubenstein is a non-signatory to the arbitration agreement and cannot be compelled to arbitration. The bankruptcy court also properly concluded the claims Pilgrim has asserted and seeks to assert in arbitration against the Laubensteins are core proceedings or interrelated with core proceedings. Given how these claims are intertwined with the bankruptcy action, the interests of judicial economy and efficiency are best served through consideration thereof by the bankruptcy court, particularly where Pilgrim appears poised to make various fraud claims that would dramatically alter the dischargeability of the Laubensteins' debts. The bankruptcy court properly denied Pilgrim's motion for relief from the automatic stay to compel arbitration.

Accordingly, it is now **ORDERED** that Pilgrim Skating Arena, Inc's appeal is **OVERRULED** and the September 9, 2020 Order of the bankruptcy court is **AFFIRMED**.

**DONE** and **ORDERED** in Fort Myers, Florida on March 5, 2021.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record